# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-3088

James V. Barringer, Appellant,

v.

James B. Peake, M.D.,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided       September 16, 2008   )

*Allan T. Fenley*, of Schenectady, New York, for the appellant.

*Paul J. Hutter*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Brent Bowker*, all of Washington D.C., were on the brief for the appellee.

Before KASOLD, MOORMAN, and SCHOELEN, *Judges*.

KASOLD, *Judge*: Vietnam War veteran James V. Barringer appeals through counsel an October 2, 2006, Board of Veterans' Appeals (Board) decision that denied (1) entitlement to an effective date earlier than October 28, 1999, for a total disability rating due to unemployability (TDIU), (2) entitlement to an initial rating in excess of 70% for post-traumatic stress disorder (PTSD), and (3) entitlement to increased schedular ratings for residuals of a left-knee injury, a left-thigh injury, and a right fifth metacarpal fracture (finger injury). The appellant does not challenge the Board's denial of entitlement to an earlier effective date for his TDIU award.  He also does not challenge the Board's determinations regarding the *schedular* ratings assigned to his left knee, left thigh, and residuals of his right fifth metacarpal service-connected disabilities.  Those issues are therefore deemed abandoned. *See Carbino v. Gober*, 10 Vet.App. 507 (1997); *Bucklinger v. Brown*, 5 Vet.App. 435 (1993).  For the following reasons, the Board's decision will be affirmed in part and remanded in part for further adjudication.

## I. BACKGROUND

Mr. Barringer served in the U.S. Marine Corps from August 1968 to February 1972. Record (R.) at 34. After applying for and receiving various awards of disability compensation for, inter alia, residuals of a left-knee injury, a left-thigh injury, and a right fifth metacarpal fracture (finger injury), he applied in 1999 for disability compensation for PTSD. He was provided VA examinations in 1999, 2002, and 2005. The 1999 medical examiner noted that Mr. Barringer had stopped working as a truck driver due to pain from his service-connected thigh, knee, and finger injuries. R. at 432. The 2005 examiner noted that Mr. Barringer had been hospitalized three times for psychiatric problems during the pendency of his appeal, once for a suicide attempt, once for a respite stay after reacting poorly to surgery, and once for treatment of PTSD. R. at 2027. The 2005 examiner also observed that Mr. Barringer was not currently employed, but that when he was employed he had significant problems with anger management and irritability. *Id.*

In the decision on appeal, the Board denied Mr. Barringer entitlement to an initial disability rating greater than 70% for PTSD, and denied his claims for increased ratings for residuals of his left-knee, left-thigh, and right-finger injuries. R. at 30. In support of its PTSD determination, the Board noted that none of the medical examination reports described symptoms warranting a disability rating in excess of 70% and that Mr. Barringer continued to maintain relationships with his wife and his granddaughter. R. at 11-15. The Board did not discuss the possible referral of Mr. Barringer's disabilities for extraschedular evaluation under 38 C.F.R. § 3.321. *See id.*

On appeal, Mr. Barringer argues that the Board erred (1) by not addressing whether his disabilities warranted referral for extraschedular evaluation under § 3.321, and (2) by relying on the April 2005 medical examiner's opinion in determining that he was not entitled to a PTSD disability rating in excess of 70%. Appellant's Brief (Br.) at 3. The Secretary disputes both arguments. *See* Secretary's Br. at 4-7, 8-10.

## II. DISCUSSION

### A. *Consideration of Referral for an Extraschedular Rating*

Pursuant to § 3.321(b)(1), the Under Secretary for Benefits or the Director, Compensation and Pension Service, is authorized to approve an extraschedular evaluation if the case "presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1) (2008). The question of an extraschedular rating is a component of a claim for an increased rating. *See Bagwell v. Brown*, 9 Vet.App. 337, 339 (1996). Although the Board may not assign an extraschedular rating in the first instance, it must specifically adjudicate whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. *Thun v. Peake*, 22 Vet.App. 111, 115 (2008). As with all its decisions, the Board must provide an adequate statement of reasons or bases for this determination. 38 U.S.C. § 7104(a); *see also Allday v. Brown*, 7 Vet.App. 517, 527 (1995) ("The [Board's written] statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court.").

Mr. Barringer asserts that the record before the Board reasonably raised the issue of extraschedular evaluation because it includes evidence that the pain from Mr. Barringer's service-connected knee, thigh, and finger disabilities forced him to leave his job as a truck driver, as well as evidence that his PTSD symptoms interfered with employment and caused several hospitalizations. Appellant's Br. at 6-7. The Secretary argues that in determining whether the Board erred in not addressing an extraschedular evaluation, the Court's review is limited solely to facts specifically found by the Board and that the evidence here did not raise the issue of extraschedular consideration. Secretary's Br. at 9. This is not the law. The Court has jurisdiction to review whether the Board erred in failing to consider whether Mr. Barringer's case reasonably raised the issue of extraschedular evaluation such that the Board erred by not discussing it. *See Travelstead v. Derwinski*, 1 Vet.App. 344, 348 (1991) ("A failure by the Board to address a relevant issue in a final decision is, in itself, subject to review under 38 U.S.C. § 7252(a) . . . since such failure falls within the Court's scope of review . . . ."); *see also Thun*, *supra* (Board must consider extraschedular evaluation when the issue is raised by the claimant or reasonably raised by the evidence of record).

3

Although the Secretary cites *Dingess v. Nicholson*, 19 Vet.App. 473 (2006), for the proposition that the Court's review is "limited to the facts found by the Board and to a determination of whether, based on those facts, a claim for [section] 3.321(b)(1) extraschedular consideration was reasonably raised and should have been discussed," *Dingess* is factually distinguishable. In *Dingess*, the appellant did not assert that the record contained facts that reasonably raised the issue of extraschedular evaluation but were never addressed by the Board. Rather, based on the Board's analysis of evidence in the record regarding employability, hospitalization, and symptoms, as well as its specific finding that Mr. Dingess was fully employable, the Court in *Dingess* was able to determine whether the appellant's disability picture was so exceptional or unusual as to reasonably raise the issue of extraschedular consideration under § 3.321(b)(1). 19 Vet.App. at 499. Upon consideration of the Board's factual determinations, the Court held that the issue of extraschedular consideration under § 3.321 was not reasonably raised and the Board therefore did not err by failing to discuss it. *See id.*

In contrast to the circumstances in *Dingess*, the Board decision in the instant case did not contain factual determinations sufficient to allow the Court to rule out the possible applicability of an extraschedular rating under § 3.321(b)(1). This Court's decision in *Thun* set forth a sequential three-part analysis to be applied when the Secretary or the Board is reviewing the evidence to determine whether referral is warranted under § 3.321(b)(1). Here, however, our review is limited to whether the evidence of record sufficiently raises the possibility that this regulation is applicable, such that the Board was required to discuss whether referral was warranted. *See Schafrath v. Derwinski*, 1 Vet.App. 589, 592-93 (1991) (The Board is required to consider all evidence of record and to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation.).

In reviewing the evidence, the factors described in § 3.321(b)(1) are relevant to determining whether extraschedular consideration is reasonably raised. The evidence of record includes a medical examination report that described the appellant's pain as severe enough to require the appellant to terminate his employment. R. at 432. Although the Board discussed the appellant's specific disabilities and their relationship to specific diagnostic codes, it did not adequately explain the role of the appellant's reported pain in its assessment of the applicable ratings and whether the

4

extent of the pain was encompassed within the schedular evaluations. In addition, the record includes the statements of a physician who opined that "[i]t is evident [Mr. Barringer] had significant difficulty during his employment with irritability and anger management and he has not been employed since his last rating examination." R. at 2027. The Board decision contains no reference to this evidence or, as stated above, any findings relevant to the extraschedular rating inquiry. Rather, the Board limited its findings regarding Mr. Barringer's employability to a consideration of his entitlement to an effective date earlier than October 28, 1999, for an award of TDIU. *See* R. at 26-29. Further, the record also includes evidence that Mr. Barringer had been hospitalized three times between September 2001 and December 2002. *Id.* Although the Board mentioned this fact, it considered it only in the context of determining the appellant's entitlement to an increased *schedular* rating for PTSD. *See* R. at 13-14.

In sum, the evidence in the record reasonably raises the potential applicability of § 3.321, and it was error for the Board not to discuss it. *See Schafrath, supra.* The Board's failure to address the applicability of an extraschedular rating under § 3.321(b) frustrates judicial review and remand is warranted. *See Allday, supra; see also Tucker v. West*, 11 Vet.App. 369, 374 (1998) (noting that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"); *Smallwood v. Brown*, 10 Vet.App. 93, 97 (1997) (noting that where the Board found that a medical examiner stated that the appellant's foot odor "would seem to preclude employment in a confined space with other workers," this disability "seems to suggest that he may qualify as an exceptional case under [§] 3.321" and remanding for Board to consider whether the claim for an increased rating of the appellant's service-connected osteomyelitis should be referred to the appropriate VA official to determine whether an extraschedular rating under § 3.321(b) would be appropriate); *Floyd v. Brown*, 9 Vet.App. 88, 95-96 (1996) (holding that procedural requirements of § 3.321(b)(1) do not derogate the obligation of the Board "to seek out all issues which are reasonably raised from a liberal reading of the documents or oral testimony submitted prior to the [Board] decision"); *Fanning v. Brown*, 4 Vet.App. 225, 229 (1993) (remanding for Board to consider applicability of § 3.321(b)(1) where record contained evidence of numerous hospitalizations for service-connected disability and scant employment history).

Because we are assessing whether the potential applicability of § 3.321(b)(1) was reasonably raised by facts in this case, and not whether referral actually is warranted, we need not conduct the *Thun* analysis. 22 Vet.App. at 115. However, on remand, the *Thun* analysis is fully applicable. Additionally, Mr. Barringer may present any additional evidence and argument in support of this matter, and the Board must consider any evidence and argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). This matter is to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

B. *Reliance on the April 2005 Medical Examiner's Report*

The record does not support Mr. Barringer's assertion that the Board erred by relying on an April 2005 medical examination report (1) that did not discuss how Mr. Barringer's PTSD affected his ability to work and (2) that offered an opinion by the examiner on the rating schedule that unlawfully assumed the function of the rating specialist. R. at 2027 ("With regard specifically to the rating schedule which was available and reviewed, the veteran does not show signs or symptoms consistent with a rating above 70%."). Contrary to Mr. Barringer's argument, the Board specifically noted that it had not based its rating determination for PTSD on the 2005 medical opinion alone but on its "review of the clinical records, beginning from the veteran's claim in October 1999," and on the fact that Mr. Barringer had successfully cared for and maintained a relationship with his granddaughter, who lived with Mr. Barringer and his wife during the pendency of his claim. R. at 15. Because the Board's decision was based on the evidence of record and did not consider the 2005 report in isolation, the Court concludes that the appellant was not prejudiced by the examiner's comment. 38 U.S.C. § 7261(b)(2). Although the Board may not base its decision on an inadequate medical examination, *see Ardison v. Brown*, 6 Vet.App. 405, 407 (1994), Mr. Barringer has not demonstrated that it has done so here, and he therefore has not met his burden of establishing error. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant has burden of demonstrating error in Board decision). The appellant has not shown that the examination report failed to contain sufficient detail that interfered with the Board's ability to consider the appellant's disability picture for purposes of determining an appropriate schedular rating for PTSD.

## III. CONCLUSION

The October 2, 2006, decision of the Board denying entitlement to an earlier effective date for TDIU, denying entitlement to an initial schedular disability rating in excess of 70% for PTSD, and denying entitlement to increased schedular ratings for residuals of residuals of a left-knee injury, a left-thigh injury, and a right fifth metacarpal fracture (finger injury) is AFFIRMED; however, the matter is REMANDED for the Board to address whether Mr. Barringer's disabilities warrant referral for extraschedular consideration under 38 C.F.R. 3.321 and appropriate action in furtherance thereto. On remand, Mr. Barringer may present any additional evidence and argument in support of this matter, and the Board must consider any evidence and argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). This matter is to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.